UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   23-80693-CV-MIDDLEBROOKS

RICHARD JOHN MCGUIRE,
    Plaintiff,

vs.

J.G. O'NEILL, INC.,
d/b/a DELRAY HYUNDAI,
a Florida Corporation

    Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW the Defendant, J.G. O'NEILL, INC. d/b/a DELRAY HYUNDAI (hereinafter "Defendant"), by and through its undersigned counsel and hereby moves this Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to Dismiss Plaintiff's Amended Complaint with prejudice and in support thereof states as follows:

**Background**

1.    Plaintiff's counsel filed a single count Amended Complaint on behalf of Richard John McGuire (hereinafter "Plaintiff") asserting a violation of the Federal Consumer Leasing Act. Central to Plaintiff's claim are two alleged transactions.

*Initial Lease Transaction*

2.    The first transaction occurred on May 30, 2019, when Plaintiff entered into the "HYUNDAI FINANCE Florida Motor Vehicle Lease Agreement" (hereinafter "Hyundai Lease Agreement") with Defendant (hereinafter, "Initial Lease Transaction").  Plaintiff attaches to the

Amended Complaint as Exhibit A only part of the Hyundai Lease Agreement.[1]  As set forth on the Hyundai Lease Agreement, after Plaintiff signed this Lease, Defendant assigned it "to Hyundai Lease Titling Trust ("HLTT") and the terms "Assignee", "we", "us" and "our" will refer to HLTT and its agents or to any subsequent assignee".

3. The Amended Complaint references the "Purchase Option at End of Lease Term" in paragraph 9 of the Hyundai Lease Agreement ("Purchase Option") which indicated that Plaintiff had an option to purchase the vehicle at the scheduled end of the Lease Term.  The Amended Complaint alleges that "In May 2019, Defendant leased a new Hyundai Santa Fe to Plaintiff." Amended Complaint ¶5.  The purchase option provision in the Hyundai Lease Agreement, paragraph 9, refers to "Section 23 on the back of this Lease for additional terms and conditions", however, Plaintiff's counsel failed to attach this section of the Hyundai Lease Agreement.

4. Pursuant to the "Factual Allegations" in the Amended Complaint, the "total purchase option price" pursuant to the Purchase Option was $17,820.50, which was calculated by adding the Residual Value of $16,921.50 and the "Purchase Option Fee" of $899.00, as set forth in the Hyundai Lease Agreement.

*Purchase Option Transaction*

5. The second transaction which is central to Plaintiff's claim occurred "In May 2022" (see Amended Complaint ¶11).  Plaintiff alleges that "Plaintiff visited Defendant dealership to exercise the purchase option" (hereinafter the "Purchase Option Transaction").  Plaintiff does not attach any Purchase Option Transaction documents.

6. Regarding Plaintiff's visit to the dealership in May 2022, Plaintiff specifically

---

[1] Undersigned counsel requested via email to Plaintiff's counsel a complete copy of the Hyundai Lease Agreement, however, as of the filing of this motion, undersigned counsel has not received a response from Plaintiff's counsel.  As set forth *infra*, Defendant no longer owns the Hyundai dealership, and does not have access to dealership records.

alleges at ¶12 what occurred:

> Yet to Plaintiff's surprise, Defendant required Plaintiff to pay a cash price of $18,216 to buyout the vehicle, as well as a $899.00 "DOCUMENTATION FEE" and a $99.25 "ELECTRONIC FILING FEE."

7. Thus, according to the "Factual Allegations", when Plaintiff came to the dealership in May 2022, to exercise his Purchase Option from the Initial Lease Transaction, the dealership charged him $18,216.00 to buy out the vehicle ($395.50 more than identified in the Hyundai Lease Agreement), an additional $899.00 Documentation Fee and a $99.25 Electronic Filing Fee, for a total buyout of $19,214.25. Plaintiff alleges that he was thus overcharged in May 2022 by $1,393.75 (the difference between the May 2022 $19,214.25 buyout price and the $17,820.50 total purchase option price from the May 2019 Hyundai Lease Agreement).

8. All of the alleged "violations" identified in Count I, specifically Amended Complaint ¶¶27, 28, and 29, arise from the additional cash price and fees allegedly charged to Plaintiff as identified in ¶12 and which specifically occurred at the May 2022 dealership visit. There are no allegations that in May 2019 during the Initial Lease Transaction, when Plaintiff left the dealership, the Defendant had violated the Federal Consumer Leasing Act. All alleged violations occurred at the time of the Purchase Option Transaction when the buyout price provided by the dealership in May 2022, was higher than the Purchase Option which was reflected at the time the lease was executed in May 2019. Plaintiff's allegations regarding the May 2019 Initial Lease Transaction do not set forth facts which establish a violation. See Amended Complaint ¶¶5-8.

9. In Plaintiff's initial Complaint, Plaintiff alleges that "Defendant's failure to honor the Purchase Option Price in the Lease was the *cause* of Plaintiff's harm". Complaint ¶26 (italics provided).

10. However, in Plaintiff's Amended Complaint, and in response to Defendant's initial Motion to Dismiss, Plaintiff removed this "cause" paragraph which was in the initial Complaint at paragraph 26, and now asserts that "Defendant's failure to accurately and completely disclose the purchase option price in the lease caused Plaintiff to pay more than what was disclosed in the lease." Amended Complaint ¶15. Removing the initial Complaint's "cause" paragraph does not eliminate the factual allegations in the Amended Complaint which provide that the alleged violation occurred during and pursuant to the Purchase Option Transaction, and not during the Initial Lease Transaction. See Amended Complaint ¶¶11 and 12.

*Defendant Sold Dealership Before Second Transaction*

11. Defendant has filed Exhibit 1, Exhibit 2 and Exhibit 3 in support of its Motion to Dismiss to which there can be no challenge to authenticity and cannot be reasonably disputed, and therefore, as set forth *infra*, may be considered by the Court when reviewing the Motion to Dismiss.

12. The record before this Court establishes that Defendant sold the Hyundai dealership prior to May 2022, when the second transaction occurred. Exhibits 1 and 2 establish that Defendant submitted its Voluntary Relinquishment of License to the Florida Department of Highway Safety & Motor Vehicles ("Department") prior to the Purchase Option Transaction in May of 2022 and therefore, was no longer a motor vehicle dealer and based on Plaintiff's allegations, could not have "caused" Plaintiff's damages by charging Plaintiff more than the Purchase Option price in May of 2022.

13. As reflected in Exhibit 2, ABC JS Auto Imports, LLC in its Buy-Sell Affidavit submitted to the Department, agreed that as the "buying dealer", it would be responsible for the "selling dealer", specifically J.G. O'Neill, Inc., for disposing of all remaining inventory, finalizing

4

payoffs of trade-in vehicles, applying for title and registration of all pending sales transactions and for liability of any unresolved consumer complaints against seller which had been filed with the Department and which are the subject of a pending court action, arbitration, mediation or administrative action involving an issue or area regulated by the Department.

14. Exhibit 3 is a record from the Florida Secretary of State, and include an application from ABC JS Auto Imports, LLC for registration of the fictitious name "Delray Hyundai" filed with the Florida Secretary of State on September 22, 2021.

### **Legal Standards**

*Motion to Dismiss*

15. A Motion to Dismiss under Rule 12(b)(6) challenges legal sufficiency of the allegations in the Complaint. See Federal Rule of Civil Procedure 12(b)(6). In assessing legal sufficiency, a court is bound to apply the pleading standards articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must…contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *AM. Dental Association v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Corp. Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006).

16. When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and assume the truth of the plaintiff's factual allegations. See *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Brooks v. Blue Cross and Blue Shields of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth.

While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678; see also *Sinaltrainal v. Coca Cola Company*, 578 F.3d 1252, 1260 (11th Cir. 2009). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level." *Id*.

### *Consideration of Matters Outside Pleadings*

17. Defendant has filed Exhibits 1, 2 and 3 to this Motion to Dismiss which Defendant requests that the Court consider when ruling on the Motion to Dismiss. A document attached to a motion to dismiss may be considered by the Court without converting the motion into one for summary judgment if the attached document is central to the Plaintiff's claim and undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999). "Undisputed" in this context means that the authenticity of the document is not challenged. *Horsley v. Feldt*, 304 F.3d at 1135.

18. In considering motions to dismiss, the court may take judicial notice and consider documents which are public records, which are attached to the motion to dismiss without converting the motion to dismiss into a motion for summary judgment. This is based on the fact that such documents are "public records that [are] 'not subject to reasonable dispute' because they [are] 'capable of accurate and ready determination by resort to sources whose accuracy [can]not reasonably be questioned.'" *Horne v. Potter*, 392 F. Appx. 800, 802 (11th Cir. 2002) (quoting Federal Rule of Evidence 201(b)).

19. Pursuant to Florida Statute §119.011(12), "public records" means all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software, or other material, regardless of the physical form, characteristics, or means of transmission, made

or received pursuant to law or ordinance or in connection with the transaction of official business by any agency. Exhibits 1, 2 and 3 filed in support of Defendant's Motion to Dismiss fall within the definition of "public records".

20. Besides the complaint allegations, a court may consider a judicially noticed fact if there is no challenge to authenticity and a document is central to a claim by the plaintiff. *Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015). A court may judicially notice a fact "at any stage of a case and on its own" if the fact "cannot be reasonably disputed because it either is generally known or can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)–(d).

21. Judicial notice of records of state agencies and state courts generally is appropriate. See *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F. 3d 649651-652 (11th Cir. 2020). (observing that judicial notice about a state case from the state court's database generally is appropriate); *Dimanche v. Brown*, 783 F.3d 1204, 1213 & n.1 (11th Cir. 2015) (judicially noticing facts in a state agency's statistical report); *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013) (permitting judicial notice of state court documents to decide a Rule 12(b)(6) motion); *Long v. Slaton*, 508 F.3d 576, 578 n.3 (11th Cir. 2007) (considering a state agency report submitted with a response opposing a motion to dismiss); *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n. 4 (5th Cir. June 1981) (en banc) ("Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports.").

## Argument

*Defendant should be Dismissed Because it was not a Dealer in May 2022, or Involved in the Purchase Option Transaction*

22. Defendant sold the Delray Hyundai dealership, voluntarily relinquished its dealer license to the Department and gave up the fictitious name "Delray Hyundai" prior to the alleged

Purchase Option Transaction.

23. Exhibit 1 filed in support of Defendant's Motion to Dismiss is a public record from the Department which is titled the "Florida Motor Vehicle, Mobile Home and Recreational Vehicle Dealers' Handbook". It is found on the Department's public website. In Exhibit 1, the Department addresses the Department's form referred to as the Voluntary Relinquishment of License form and identifies the Department's requirements for the "Buy/Sell of Dealerships". Exhibit 1 (page 32 of the Handbook) states, in part:

> If the relinquishment of the selling dealer's license is the result of a buy-sell agreement, a buy-sell affidavit completed by the buying dealer, the Voluntary Relinquishment of License Template (VRL) completed by the selling dealer and the original license of the selling dealer is required to be submitted by the buying dealer to the Field Office responsible for the dealership.
> …
> The Voluntary Relinquishment of a License form, buy-sell affidavit, selling dealer's original license and Inventory Record are reviewed for accuracy by the Field Office.

24. Exhibit 2 attached to Defendant's Motion to Dismiss are public records received from the Department providing the following:

　　a. Request from J.G. O'Neill, Inc. by James G. O'Neill, including his driver's license, to the Department, Division of Motorists Services/Bureau of Dealer Services requesting "proof" of Dealer License Voluntary Termination for Dealer License number VF-10018611.

　　b. Emails dated June 7, 2023, between Diana Calderone on behalf of J.G. O'Neill, Inc., and Chevonne Dames from the Florida Department of Highway Safety & Motor Vehicles submitting J.G. O'Neill, Inc.'s document request to the Department and Department's response producing the requested documents.

　　c. Eight pages of documents produced by the Department to J.G. O'Neill, Inc., including the Department's records of the receipt of the Voluntary Relinquishment of License for

J.G. O'Neill, Inc. and its Acura and Hyundai license, specifically license number VF-1001861-1.

25. As evidenced by the record before this Court, Defendant, J.G. O'Neill, Inc., had voluntarily relinquished its dealer license and therefore, was not a licensed motor vehicle dealer, nor the operator of the Delray Hyundai dealership in May of 2022.

26. Exhibit 3 is the Application for Registration of Fictitious Name filed on September 22, 2021, with the Florida Secretary of State on behalf of ABC JS Auto Imports II, LLC and Exhibit 3 also has the Articles of Organization for Florida Limited Liability Company for ABC JS Auto Imports II, LLC and ABC JS Auto Imports, LLC.  Exhibit 3 provides additional evidence that Defendant did not own nor was operating "Delray Hyundai" in May of 2022.

27. Plaintiff clearly alleges in his initial Complaint ¶26 regarding the Purchase Option Transaction that "Defendant's failure to honor the Purchase Option Price in the Lease was the cause of Plaintiff's harm."   The allegations in the Amended Complaint, specifically ¶¶11 and 12, again set forth that the cause of Plaintiff's alleged damage was the additional $1393.75 "required" by the dealership operator in May 2022 over and above the Purchase Option price identified in May 2019 on the Hyundai Lease Agreement.

28. In the Amended Complaint ¶15, with Plaintiff's counsel now recognizing that Defendant had sold the dealership prior to May 2022, Plaintiff seeks to drag Defendant into his overcharge claim by asserting that "Defendant's failure to accurately and completely disclose the purchase option price in the lease caused Plaintiff to pay more than what was disclosed in the lease."  In other words, in this conclusory statement, without factual substance, Plaintiff alleges that at the time of the execution of the initial Hyundai Lease Agreement in May 2019, Defendant should have disclosed the higher buyout price that the new owner allegedly charged Plaintiff three years later in May 2022.  Given the facts in this case, the allegations in the Amended Complaint

nonsensically plead that the Defendant's "failure to accurately and completely disclose the purchase option price in the initial lease", specifically to disclose the alleged overcharge in May 2022, "caused" Plaintiff to pay more than what was disclosed in the lease.

29.  Simply put, this allegation makes no sense, especially under the factual findings in this case that the Defendant did not own the dealership in May 2022, and was not involved in the Purchase Option Transaction and Defendant had no ability to known in May 2019 that a new owner would allegedly charge more in the May 2022 Purchase Option Transaction than provided for in the Purchase Option identified on the legally compliant initial Hyundai Lease Agreement executed in May 2019.

30.  Based upon the allegations in the Amended Complaint and the facts set forth in the Exhibits, the Court should find that Plaintiff's claim arose pursuant to the Purchase Option Transaction and since Defendant did not own the dealership in May 2022, and was not involved in the Purchase Option Transaction, Defendant should be dismissed with prejudice from this lawsuit.

WHEREFORE, Defendant requests that the Court dismiss Defendant with prejudice on the basis that Defendant did not own the Delray Hyundai dealership, nor operate the dealership in May 2022, at the time of the Purchase Option Transaction.

Respectfully submitted,

>/s/ A. Edward Quinton, III
> A. Edward Quinton, III, Esquire
> Florida Bar No. 464074
> QUINTON & PARETTI, P.A.
> 1 SE 3rd Avenue, Suite 1405
> Miami, Florida 33131
> PH: (305) 358-2727
> FAX: (305) 358-0779
> E-MAIL: equinton@quintonparetti.com
> lpena@quintonparetti.com

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's ECF Filing System upon Joshua E. Feygin, Esquire and Darren R. Newhart, Esquire this 13th day of July 2023.

<u>/s/ A. Edward Quinton, III</u>
A. Edward Quinton, III, Esquire